Shauck, J.
The plaintiff brought suit in the court of common pleas for an injunction to prevent the making of a fill of 125 feet in width in the Miami river along the present front of his lands on that stream, beginning at a point 148 feet above Third street, and extending thence northwardly to first street, to be platted into lots, to be sold and used for building purposes.
In the common pleas a final judgment was rendered in favor of the plaintiff upon demurrer to the petition. The defendant appealed the cause to the circuit court, and it is now submitted to us upon his application for a suspension of the injunction granted below.
Numerous adjudications in Ohio have clearly settled the rules by which the rights of the parties should be determined. The defendant is the owner of the soil to the middle of the stream, which includes that portion of the channel which he proposes to fill. He may exercise over it any proprietary right which will not interfere with the rights of other riparian owners. He is without right to interrupt the natural flow of water in its appropriate channel to the injury of another *650 riparian owner. The channel, within this rule, embraces the ground covered by the current of the stream, not only at its usual stage, but all that may be occupied by it at any stage which it may reasonably be expected to reach. The defendant does not propose to erect a levee to protect lands from the incursion of vagrant waters at flood-tide, but to claim a portion of the channel which, at frequently recurring floods, is covered by the flowing waters of the stream.
It is familiar that courts of equity exercise their jurisdiction only to prevent injuries of a substantial nature. The claim of counsel for the defendant is that the proposed fill will not interrupt the flow of the waters in the river, but will in fact facilitate it; that the channel is now too wide to secure the most rapid flowage of water in the stream. The theories upon which we are invited to believe that to cut off more than one-fifth of the space occupied by the currents of ordinary floods will not impede their flow, do not consist with our own observation, nor with the weight of the evidence submitted to us. Indeed, an expert witness called by the defendant, concurs with us in the opinion that the proposed fill would interrupt the natural flow of the waters. We regret that we cannot reach the conclusion that the waterway of the Miami river is more than adequate. If that conclusion could be reached upon sufficient evidence, it would enable the enterprising defendant to make a valuable addition to the city , and bring a sense of security that has never been inspired by observing the operations of the waters of the Miami and Wolf creek at their confluence in front of the proposed fill.
Another proposition made on behalf of the defendant finds better support in the evidence, though none in the law. It is that the waterway in front of the fill, if it be made, will leave a larger capacity than at the other points above and below. -And it is said that in estimating the capacity of the stream at this point, the controlling factor is the Third-street bridge. The evidence in the case agrees with common observation that waters flowing *651 in a direct channel require less way than at curves, and that at the confluence of streams more width is required because of the interruption to the flow that is occasioned by the eddies and cross currents. Here space is required for a curve and a confluence.
Assuming that the defendant has shown that' the proposed All will interpose less obstruction to the natural, flow of the waters than is offered by the abutments and piers of the bridge at Third street, the assumed right is not thereby established in the defendant. If this controversy had been heard twenty-five years ago when the waterway was under the wooden portion of the bridge, this contention, if sound, would have entitled the defendant to claim and fill half of the channel occupied by ordinary floods. It is the right, and it may become the duty, of the city to increase the waterway at the bridge, and upon doing so, to secure for itself and its inhabitants the full natural flow of the water in the channel.
We may not be able to explain the precise method iu which the waters of the stream, upon the interruption of their natural flow and course, would injure the property of the city. It is sufficient upon this point to say that the water elevation in the stream would be substantially increased, from which would, ensue increased danger to all the levees in the vicinity. In case of a low stage of water in Wolf creek and a high stage in the Miami, the proposed fill would tend strongly to throw the current of the latter stream against the levee and abutment opposite.
The doctrine of estoppel based upon the defendant’s plat of his former improvement invoked on behalf of the city is not available to it in this ease. It is true that in a similar case in Franklin county this court enjoined a proprietor from selling as building lots ground which, upon his plat, had been shown to be reserved for the purposes of a park. But this was at the suit of one of the purchasers of the surrounding lots, who had purchased upon the representations made upon the plat. Here the city did not purchase upon the plat of the *652 defendant's former improvement. Although by his dedication it became the owner of Sunset avenue, it is not alleged that any injury to that street would result from the.proposed fill.
William Craighead and Frank Conover, for plaintiff in error.
McMahon & McMahon, Young & Young, Gottshall & Brown and Gunckel, Rowe & Shuey, contra.
Nor does the petition allege that contract obligations which the proposed fill would violate, were in any way incurred by Robert at the time of making the former improvement and plat thereof. No reason, therefore, appears in the petition why the defendant might not fill this portion of the channel if it were within his proprietary rights. But for the reasons stated, we are of the opinion that he has no such right, and the city is entitled to the perpetual injunction awarded in the common pleas court. ‘ The application to suspend is denied. i